**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

LEE ANDREW SMITH,

                     Petitioner,

vs.

JAMES MCKINNEY,

                     Respondent.

No. C 11-3010-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING OBJECTIONS
TO MAGISTRATE JUDGE'S
RECOMMENDED DISPOSITION OF
STATE PRISONER'S *HABEAS*
PETITION**

---

**TABLE OF CONTENTS**

I.     **INTRODUCTION AND BACKGROUND**................................................**3**
    A.    *Factual Background* ..................................................................... 3
    B.    *Procedural Background* ............................................................... 5
        1.    *State proceedings* .............................................................. 5
            a.    *Direct Appeal* ......................................................... 8
            b.    *Postconviction Relief Proceedings* ............................. 9
                i.    *Iowa District Court Decision* ........................... 9
                ii.    *Iowa Appellate Court Decision*....................... 10
        2.    *Federal Proceedings* ...................................................... 15
            a.    *Smith's § 2254 Petitions* ......................................... 15
            b.    *The Report And Recommendation* ............................ 18

II.    **LEGAL ANALYSIS** ........................................................................ 23
    A.    *Review Of A Report And Recommendation*................................. 23
    B.    *Federal Habeas Relief* ............................................................. 26
        1.    *"Exhausted" and "adjudicated" claims*............................. 28
            a.    *The "Exhaustion" and "adjudication"
                 requirements* ...................................................... 28
            b.    *Limitations on relief on "exhausted" claims* ............... 29
        2.    *The § 2254(d)(1) standards* ............................................. 31

          *a.*    *The "contrary to" clause* ........................................ **31**
          *b.*    *The "unreasonable application" clause* ..................... **31**
          *c.*    *The effect of § 2254(d)(1) deficiencies in the*
               *state court decision* ............................................. **33**
      *3.*     *The § 2254(d)(2) standard* ............................................. **34**
      *4.*     *De novo review of issues not reached by the state*
           *court* ...................................................................... **35**
  *C.*     *"Clearly Established Federal Law" Regarding Ineffective*
       *Assistance Of Counsel* ......................................................... **35**
      *1.*     *The Strickland Standard* ............................................... **36**
      *2.*     *Strickland's "deficient performance" prong* ........................ **37**
      *3.*     *Strickland's "prejudice" prong* ....................................... **39**
      *4.*     *Smith's Objections* ...................................................... **40**
      *5.*     *Analysis* ................................................................. **41**

**III.**   **CERTIFICATE OF APPEALABILITY** .............................................. **54**

**IV.**   **CONCLUSION** ................................................................ **55**

Petitioner Lee Andrew Smith's (Smith) Petition For Writ of Habeas Corpus Under 28 U.S.C. § 2254 is before me pursuant to a Report and Recommendation (R&R) of United States Magistrate Judge Leonard T. Strand recommending that the petition be denied. Judge Strand's R&R was filed on November 7, 2014 (docket no. 88). Smith filed objections to the R&R on November 14, 2014 (docket no. 89). The Respondent, James McKinney, the warden of Fort Dodge Correctional Facility, did not file any objections to the R&R. In this Memorandum Opinion and Order, I must conduct a *de novo* review of those parts of Judge Strand's R&R to which the respondent has objected. In doing so, I consider whether to accept, reject, or modify Judge Strand's R&R.

# I.    INTRODUCTION AND BACKGROUND

## A.    *Factual Background*

Absent rebuttal by clear and convincing evidence, I must presume that any factual determinations made by a state court in a state prisoner's criminal and postconviction relief cases were correct. 28 U.S.C. § 2254(e)(1); *see Bell v. Norris*, 586 F.3d 624, 630 (8th Cir. 2009) (a federal court must deem factual findings by the state court to be presumptively correct, subject to disturbance only if proven to be incorrect by clear and convincing evidence). The Iowa Court of Appeals summarized the facts underlying Smith's conviction, as follows:

> In April 2006, Smith entered his ex-girlfriend's home, armed with a knife, and physically and sexually assaulted her. On April 16, 2006, the State charged Smith with first-degree burglary in violation of Iowa Code sections 713.1 and 713.3 (2005) (Count I), third-degree sexual abuse, enhanced as a habitual offender, in violation of sections 709.1, 709.4, 902.8, and 902.9(2) (Count II), and domestic abuse assault causing bodily injury, enhanced as a habitual offender, in violation of sections 708.2A(4), 902.8, and 902.9(2) (Count III).
>
> Before trial, the State offered Smith a plea deal that would have resulted in a twenty-five year prison sentence. The State also indicated that if Smith did not take the deal, it might file a first-degree kidnapping charge against him. Smith's trial attorney, Andrea Dryer, informed Smith of the State's offer and the possibility of a first-degree kidnapping charge, but also told Smith she did not believe the State would have a strong kidnapping case.
>
> Smith declined the plea offer, and the case proceeded to trial on June 27, 2006. During the victim's testimony, Smith leaned over to Dryer and whispered loudly that he "wanted this to stop" and didn't want the victim to "go through this anymore." Smith then repeated himself, speaking loudly enough that Dryer believed some of the jurors had heard.

Dryer told the trial judge that she and her client needed a break. A recess was called, after which the State and Smith negotiated a plea bargain. Pursuant to the plea agreement, Smith pled guilty to all three counts, and the State recommended a sentence of twenty-five years on Count I, fifteen years on Count II, and fifteen years on Count III, with the sentences on Counts II and III to run concurrent to each other but consecutive to the sentence on Count I.

During the required Iowa R. Crim. P. 2.8(2)(b) colloquy, Smith stated he was forty-nine years of age, had a high school education, and understood the charges against him. He further indicated that he was pleading guilty in order to avoid a first-degree kidnapping charge and the lifetime prison sentence that would result if he were convicted thereon. The judge informed Smith that he would have to take a batterer's education class, register as a sex offender, and pay a civil penalty. Smith was not told he would be subject to mandatory lifetime supervision under Iowa Code section 903B.1 (Supp.2005). The district court accepted Smith's plea.

Smith requested immediate sentencing. The judge advised Smith that if he was sentenced immediately, he would waive his right to file a motion in arrest of judgment and could not challenge any defects in the plea proceedings. The colloquy indicates Smith understood he was waiving that right. The court then sentenced Smith to the forty-year sentence recommended by the prosecution, consisting of twenty-five years on Count I plus fifteen years each on Counts II and III, the sentences on the latter two counts running concurrently. The sentence imposed by the court did not include the mandatory section 903B.1 lifetime parole term.

Later, the district court entered an order finding that Smith's sentence did not comply with section 903B.1, set it aside, and scheduled a resentencing hearing for December 18, 2006. At that time, Smith asked to withdraw his guilty plea, and the hearing was continued to January 16, 2007. Five days before the scheduled resentencing hearing, Smith filed

a motion in arrest of judgment and a formal application to withdraw his guilty plea. The district court then entered an order granting Smith a new trial, holding that: (1) the omission of the section 903B.1 lifetime parole term was an illegal sentence that could be corrected at any time; (2) Smith was not informed of the section 903B.1 sentence, causing his plea to be unknowing; and (3) the improper plea invalidated the entire agreement and not just the sexual assault plea. The State appealed. On appeal, the supreme court found Smith had waived his right to file a motion in arrest of judgment and remanded the case for resentencing, but stated that Smith could bring a postconviction relief action challenging his guilty plea following resentencing. *State v. Smith*, 753 N.W.2d 562, 565 (Iowa 2008).

After procedendo issued, the district court resentenced Smith as before to forty years' imprisonment, consisting of twenty-five years on the burglary charge, and fifteen years on the sexual abuse and domestic abuse assault charges to be served concurrently. The court added the lifetime parole term required by section 903B.1.

*Smith v. State*, 791 N.W.2d 712, 2010 WL 4867384, *1-*2 (Iowa Ct. App. 2010) (unpublished table decision). In further summarizing the procedural history below, I refer to the record, the applicable decisions of the Iowa district courts, Iowa Court of Appeals, and Iowa Supreme Court, Judge Strand's R&R, and the parties' briefs. In order to provide a complete picture of the procedural history, some of the facts discussed above are repeated below. I will also discuss additional facts where relevant.

## B.   *Procedural Background*

### 1.   *State proceedings*

On April 13, 2006, the State charged Smith with first-degree burglary (Count I); sexual abuse in the third-degree as a habitual offender (Count II); and domestic abuse

assault causing injury as a habitual offender (Count III).[1]  Prior to the first and second days of trial, Smith rejected the State's offered plea bargains, which would have resulted in a twenty-five year prison term.[2]  Tr. at 53.  The parties proceeded to trial, and Smith was represented by Andrea Dryer (Dryer).  *Id.* 55–56.

On June 27, 2006, Smith's trial commenced, and a jury was selected.  The following morning, on June 28, 2006, the presentation of evidence began.  The first witness to testify was the victim of the crimes Smith committed, Murna Wynter.  *Id.* 56–57.  According to the record, Smith decided he wanted to plead guilty during the victim's testimony.  *Id.* 121–122.  More specifically, he "whispered loudly [to Dryer] that he 'wanted this to stop' and didn't want the victim to 'go through this anymore.'"  *Smith*, 2010 WL 4867384 at *1.  A ten minute recess was held prior to the end of

---

[1] In order for the reader to better understand the factual context in which this case arose, and why Smith's victim's testimony arguably compelled Smith to plead guilty, I retell some of the egregious facts surrounding the crimes that Smith committed.  Here are the facts:  The victim, Murna Wynter, previously lived with the petitioner, Smith.  Respondent's Merits Brief (docket no. 86), 3.  When Wynter moved away from Smith into her own home, Smith entered Wynter's new home, without permission, one morning at 2:00 a.m.  *Id.* at 4.  He was armed with a knife.  *Id.*; *see* Transcript of Proceedings, Respondent's Exhibit 1(c) (Tr.), at 90.  Smith "entered her bedroom," "turned on a light," appeared "to be more 'harsh,'" and "accused Wynter of being with another man."  Respondent's Merits Brief at 4 (quoting Tr. 82).  Subsequently, Smith physically and sexually assaulted Wynter—*e.g.*, Smith punched Wynter several times in the head and body, restrained Wynter inside her own home as she tried to escape twice, and forced Wynter to perform sexual acts on him—and Smith stole money from Wynter's purse.  *Id.* at 4–5.  The police later took photos of the injuries to Wynter's "face, arms, hands, and back."  *Id.* at 6.  Smith's counsel testified at Smith's postconviction relief hearing on September 28, 2009 (as discussed below), and she explained that "Smith had a lengthy criminal history involving serious crimes and was not a novice to the system."  *Smith*, 2010 WL 4867384 at *6.

[2] The state prosecutor extended the plea offer until Wynter, Smith's victim, took the stand on the second day of trial in order to "spare Miss Wynter the embarrassment of going through this trial."  Tr. at 53.

Wynter's direct examination. After that recess, Smith entered pleas of guilty to the three charged offenses, and he requested immediate sentencing by the district court. At that time, Smith's counsel informed the court that part of the plea deal was that "there would be no first degree kidnapping charge filed." Tr. 123.

By requesting immediate sentencing, the district court advised Smith that he waived his right to file a motion in arrest of judgment. Tr. at 133–134. The district court accepted Smith's guilty plea to all three counts, and Smith was sentenced that same day. Smith was sentenced to prison for twenty-five years on the burglary conviction; fifteen years in prison on the sexual abuse as a habitual offender conviction; and fifteen years in prison on the assault causing bodily injury as a habitual offender conviction. *Id.* at 136–138. Smith's sentences on Counts II and III were set to run concurrent to each other but consecutive to the sentence on Count I. Thus, Smith was sentenced to a total term of forty years imprisonment.

On October 31, 2006, Chief Judge Alan L. Pearson of the First Judicial District issued an administrative order finding that Smith's sentence did not comply with Iowa Code § 903B.1.[3] Accordingly, Chief Judge Pearson ordered the presiding judge, Judge Stephen C. Clarke of the First Judicial District of Iowa, to "promptly review the case with the parties and either enter a corrected sentence or schedule it for resentencing,

---

[3] "Section 903B.1 requires that a person convicted of a Class C felony under section 709, such as third-degree sexual abuse, be sentenced to a special lifetime parole term." *Smith*, 2010 WL 4867384 at *2 n.1. Here, Smith was not told he would be subject to mandatory lifetime supervision under Iowa Code § 903B.1 during the district court's plea colloquy. Nor did the district court sentence Smith to the mandatory lifetime supervision at his initial sentencing as required by law. Chief Judge Pearson's administrative order was filed "because of the newness of the section 903B.1 of the Code and a practice in the First Judicial District wherein judges had not been informing defendants of the applicability of 903B.1 in relevant cases that defendant and all other similarly situated defendants were to be resentenced." Ruling On Application For Post-Conviction Relief (docket no. 52-1), 12.

whichever is appropriate." Respondent's Merits Brief at 7 (quoting Order (10-31-06)). The sentencing order was set aside and a hearing regarding the resentencing of Smith was held on December 18, 2006. At that hearing, Smith requested that his guilty plea be withdrawn. The district court continued the resentencing hearing until January 16, 2007.

On January 11, 2007, Smith filed a Combined Motion In Arrest Of Judgment And Application To Withdraw Guilty Plea. Report at 6–7. Smith sought to withdraw his guilty plea because he was not informed that he would be subject to the mandatory lifetime supervision requirement of Iowa Code § 903B.1 due to the sex abuse conviction. On March 27, 2007, Judge Stephen C. Clarke of the First Judicial District of Iowa granted Smith a new trial on three bases: (1) Smith's sentence was illegal as the sentence did not include the mandatory lifetime supervision requirement of § 903B.1 and it could be corrected at any time; (2) Smith's plea was unknowing because he was not informed of a direct consequence of his plea—that is, the mandatory lifetime supervision; and (3) Smith's entire plea agreement was invalidated, not just the plea to the sexual assault, because the plea was improper. *See* Order Granting New Trial (docket no. 52 -1), 4–6; *see also Smith*, 2010 WL 4867384 at *3. The State appealed the district court's decision on April 13, 2007, to the Iowa Supreme Court. *Id*. at 8.

### a.    *Direct Appeal*

On July 25, 2008, in an opinion authored by Justice David S. Wiggins, Iowa's Supreme Court reversed the district court's decision. *State v. Smith,* 753 N.W.2d 562, 565 (Iowa 2008). Iowa's highest court held that the district court erred and abused its discretion by considering Smith's motion in arrest of judgment. *Id*. at 564. This is because "Smith's voluntary wavier of his right to file a motion in arrest of judgment [at his initial sentencing] continues to apply at the time of his resentencing." *Id*. For that reason, Iowa's Supreme Court reversed the district court's judgment granting Smith a

new trial and remanded Smith's case for the sole purpose of resentencing him. Iowa's Supreme Court preserved Smith's right to file an application for postconviction relief to challenge his guilty plea. *Id.* at 565. On remand, the district court sentenced Smith to forty years imprisonment and added the lifetime parole term required by Iowa Code § 903B.1. Smith's filing of his postconviction relief application followed.

### b.    *Postconviction Relief Proceedings*

### i.    *Iowa District Court Decision*

On September 28, 2009, Smith filed a postconviction relief application in Black Hawk County, Iowa. In his application for postconviction relief, Smith made two primary contentions as to why he received ineffective assistance of counsel at trial: (1) he was coerced into pleading guilty; and (2) his counsel failed to file a motion in arrest of judgment raising the district court's failure to advise him of the mandatory lifetime supervision under § 903B.1. *See* Ruling On Application For Post-Conviction Relief at 12–13; *see also Smith*, 2010 WL 4867384 at *2; Report at 7. An evidentiary hearing was held during which Smith and Dryer testified.

The next day, Judge George L. Stigler for the First Judicial District of Iowa, ruled on Smith's application for postconviction relief. *See* Ruling On Application For Post-Conviction Relief at 11–15. On the one hand, the district court rejected the claim that Smith was coerced into pleading guilty. *Id.* at 14–15. "[Smith's attorney] testified that she at no time indicated a lack of faith in defendant's case, nor did she say to him, contrary as to defendant assertions, that he should plead guilty," wrote the district court. *Id.* at 14. Smith also indicated during his plea colloquy and sentencing that he was not threatened or coerced to plead guilty. *Id.* The district court "reject[ed] Mr. Smith's credibility and [found] that his guilty pleas were freely, voluntarily and intelligently made without any coercion of any type, by trial defense counsel or the state." *Id.*

On the other hand, the district court found in Smith's favor on his other ineffective-assistance-of-counsel claim because Smith's counsel breached an essential duty by not informing Smith that he faced mandatory lifetime parole. In the district court's view, there was also sufficient prejudice to require Smith's plea to Count II to be vacated:

> The court is not able to accept the state's argument that had Mr. Smith been so informed, it would not have mattered and he would have entered his guilty plea to Count II [sexual abuse]. The court accepts Mr. Smith's testimony that had he been aware of the applicability of section 903B.1, he would not have entered a plea of guilty to Count II.

*Id.* at 13; *Smith*, 2010 WL 4867384 at *3. Based on the district court's stated rationale, it vacated Smith's plea as to Count II. However, the district court declined to vacate Smith's guilty pleas and sentences on the other counts (Counts I and III) because the section 903B.1 requirement only applies to the sexual abuse count (Count II). *See* Ruling On Application For Post-Conviction Relief at 15. In closing, the district court found that the State, if it so decided, "may retry defendant on Count II." *Id.*

### ii.    *Iowa Appellate Court Decision*

Smith appealed the district court's decision arguing that, once the district court found ineffective assistance of counsel, the district court should have vacated all the convictions and sentences. *Smith*, 2010 WL 4867384 at *4. The State cross-appealed. The State contended that Smith's entire application should have been denied because Smith did not establish prejudice, "i.e., that there was a reasonable probability he would not have pled guilty had he been informed of the section 903B.1 sentence."[4] *Id.* On November 24, 2010, the Iowa Court of Appeals issued its opinion on that appeal,

---

[4] As Judge Strand correctly noted in his R&R, "While the State did not challenge the district court's finding that Smith's counsel failed to perform an essential duty, it argued that Smith failed to demonstrate prejudice." Report at 8.

and the opinion was authored by Justice, then Judge, Edward M. Mansfield.[5]  In that opinion, the Iowa Court of Appeals agreed with the State.  Thus, the appellate court reversed the district court's decision and affirmed Smith's judgment and sentence in all respects.

In reaching that decision, the appellate court reasoned, in pertinent part, as follows:

> It seems implausible to us that the lifetime special parole term would have been a dealbreaker, had Smith been told about it.  Smith's own testimony at the postconviction relief hearing indicates his real concern had to do with the possibility of being charged with first-degree kidnapping, which would carry a lifetime sentence without parole[.]

*Id.* at *5.   The appellate court continued by quoting Smith's testimony at his postconviction relief hearing, which illustrates that his real concern was the possibility of a lifetime sentence.  Although Smith's testimony at his postconviction relief hearing is recited by the Iowa Court of Appeals and Judge Strand's R&R, I include his testimony here, again, for the reader's ease of locating it:

> Q. If you had known that there was a special sentencing provision that required you to be on lifetime parole, would you still have pled guilty at the time you did?
>
> A. No, ma'am. I wouldn't have pled guilty to that. I didn't even really want to plead guilty to the 40 years.
>
> Q. But you did [plead guilty] because?
>
> A. Because I was being told I was going to get a life sentence for the First Degree Kidnapping. Said I was making a mistake for going to trial.

---

[5] Justice Mansfield was subsequently appointed to the Iowa Supreme Court in February of 2011.

Q. And you're saying Ms. Dryer told you that during [the victim's] testimony?

A. Those are her exact words.

Q .... you must have thought [the victim] was doing a very good job because you were concerned about being convicted of Kidnapping in the First Degree and serving life, so you took the plea.

A. I did not commit a Kidnapping First Degree. If I did, give it to me then. Where is it at?

Q. At the time she was testifying, you were the only one that interrupted the proceedings and wanted to enter a plea; correct?

A. That's wrong. My lawyer was telling me if I didn't take the deal, that I was going to get a First Degree Kidnapping and I have been through the law book and I haven't committed to First Degree Kidnapping. The only thing you can charge me with is false imprisonment.

Q. Do you recall during the plea colloquy with the judge at the time of your plea that you told him the reason you were pleading and the reason you took the plea offer is because you didn't was [sic] any life sentence so you were asking the court to accept you [sic] plea offer?

A. Yeah. I do recall that. Anybody in their right mind would accept the plea bargain if they thought they were going to get First Degree Kidnapping. They were illiterate to the law as I was at that time. I'm not illiterate to the law anymore. I know my constitutional rights now.

Q. So you were taking this [plea deal] regardless [of] whether anybody told you about lifetime parole or not. That didn't even matter to you, did it?

A. My lawyer hadn't told me the truth in trial. I wouldn't have—she had let me went on the trial, I would have pursued going to trial.

> Q. What are you saying she didn't tell you the truth about?
>
> A. What do I think she didn't tell me the truth about? She knew there wasn't never no First Degree Kidnapping I had committed anyway. You know that—I know that as of now. I have been down here for three years—

*Id.*; *see also* Report at 9–10.

Following the state appellate court's quotations of Smith's testimony, it summarized Dryer's testimony at the postconviction relief hearing. At that hearing, Dryer disputed Smith's allegation that she "misled" or "coerced" him to believe that "he would be charged with and convicted of first-degree kidnapping." *Smith*, 2010 WL 4867384 at *5. To the contrary, Dryer testified that "she told Smith she did not believe the State would have a strong case for a kidnapping charge." *Id.* at *6. Dryer further testified that the State's first witness's testimony was "'very believable.'" *Id.* According to Dryer, during the victim's testimony, Smith "became more emotional" and repeatedly insisted that he wanted the questioning of his victim, Wynter, to stop, and he was "'adamant'" about pleading guilty. *Id.*

After considering Smith's and Dryer's testimonies at the postconviction hearing, the state appellate court reasoned that "[t]his record does not support a finding that the section 903B.1 parole term would have altered Smith's decision to plead guilty." *Id.* Rather, the appellate court continued: "Smith's concern at the time was the years of *incarceration* he would face." *Id.* As he indicated at his guilty plea and postconviction relief hearings, Smith was seeking to avoid a first-degree kidnapping charge that, if proven, would carry a lifetime sentence of imprisonment without parole.

The appellate court took issue with the district court's decision to accept Smith's testimony that if he was aware of § 903B.1's applicability, he would not have pleaded guilty to Count II. In the words of the appellate court, "For one thing, Smith's testimony, quoted above, does not really say that." *Id.* Also, the appellate court noted

that the district court gave far less credence to Smith's testimony than Dryer's testimony at the postconviction relief hearing; the court "found Smith's testimony 'not believable.'" *Id.* More importantly, the appellate court considered whether it would have made a difference if Smith "unequivocally" asserted that he would not have pleaded guilty if he were aware of the mandatory lifetime supervision requirement of § 903B.1:

> Even if Smith had unequivocally testified at the postconviction relief hearing that he would not have pled guilty had he been aware of the section 903B.1 lifetime parole term, a court does not have to accept this kind of self-serving claim. *See Kirchner* [*v. State*, 756 N.W.2d 202, 206 (Iowa 2008)] ("Kirchner offered no evidence to support his self-serving statement that he would have accepted the plea deal had he known the great likelihood of his conviction of first-degree kidnapping."); *State v. Tate*, 710 N.W.2d 237, 241 (Iowa 2006) (holding that a statement, standing alone, that is a conclusory claim of prejudice is not sufficient to satisfy the prejudice element).

*Id.*

In sum, based on the whole record, the state appellate court was unable to conclude that "Smith would have rejected the plea bargain had he known of the mandatory parole term." *Id.* For that reason, Smith did not meet his burden of proving he was prejudiced by ineffective assistance of counsel, and therefore, the appellate court dismissed Smith's application for postconviction relief. *Id.* at *7. In reaching that conclusion, the appellate court did not need to reach Smith's argument that the district court should have vacated Smith's convictions and sentences on his other charges. *Id.* On February 2, 2011, the Iowa Supreme Court denied Smith's application for further review of the decision of the Iowa Court of Appeals. The Writ of Procedendo was issued on February 14, 2011.

## 2.  Federal Proceedings

### a.  Smith's § 2254 Petitions

On June 28, 2011, Smith filed a Pro Se Petition For Writ of Habeas Corpus (docket no. 7).  On April 9, 2013, Smith filed a Brief In Support Of Petition For Writ Of Habeas Corpus (docket no. 51).  At that time, Smith was represented by Christopher Cooklin (Cooklin).  On July 15, 2013, Smith filed a *pro se* motion and requested the appointment of a new attorney (docket no. 55).  On July 16, 2013, Magistrate Judge Strand filed an order granting Smith's Pro Se Motion To Appoint New Attorney (docket no. 56).  On May 22, 2014, Chad Primmer (Primmer) filed a supplemental memorandum, and in that memorandum, Primmer adopted Cooklin's brief filed on April 9, 2013, as it "appropriately briefed portions of Petitioner's argument including procedural history, legal standards for *habeas* relief and Smith's exhaustion of state remedies."  Petitioner's Supplemental Memorandum In Support Of 2254 Application (docket no. 85), 1.

As Judge Strand explained in his R&R, Smith makes two contentions in his merits brief that he received ineffective assistance of counsel: he was *not* informed about (1) the parole board's process for determining parole, and (2) the mandatory lifetime supervision requirement under section 903B.1.[6]  Report at 12 (citing to Petitioner's Supplemental Memorandum at 5); *see also* Brief In Support Of Petition For Writ Of Habeas Corpus at 11.  Therefore, Smith contends that his guilty plea as to all three counts should be vacated "because he was denied his right to effective assistance

---

[6] Judge Strand is also right in noting that Smith's initial Pro Se Petition For Writ Of Habeas Corpus included three separate grounds for relief.  Pro Se Petition For Writ Of Habeas Corpus at 3–5.  However, Smith's merits brief states in much clearer terms the defendant's bases for relief (docket nos. 51, 85), and, unlike the grounds in his initial *habeas* petition (docket no. 7), the bases are not repetitive.

of counsel during all portions of his proceedings." Petitioner's Supplemental Memorandum at 5.

In furtherance of his argument that he received ineffective assistance of counsel, Smith asserts that "[i]t has never been contested that Smith's trial attorney did not advise him of the lifetime supervision provision set forth in Iowa Code § 903B.1." *Id.* The gravamen of Smith's contention is that I should find, "pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), that his counsel failed in an essential duty and that he suffered prejudice there from [sic]."[7] *Id.* at 6. Smith requests that I "expand upon Judge Stigler's opinion that permitted [Smith's] post-conviction under Iowa Law on Count II be held applicable to all counts." *Id.* Put differently, Smith seems to contend that his entire plea agreement should be invalidated because Smith's attorney failed to advise him of the mandatory lifetime supervision requirement under § 903B.1. Smith reiterates his allegation that, in hindsight, he "would have rejected the entire plea offer had he been aware of the requirement of lifetime supervision under Iowa Code § 903B.1." *Id.*

Next, Smith seeks to advance his argument by citing to a lengthy passage from a dissenting opinion in *State v. Carney*, 584 N.W.2d 907 (Iowa 1998), an opinion in which Judge Bruce M. Snell Jr. distinguished "collateral" from "direct" consequences

---

[7] Prior to making this contention, Smith refers to two inapplicable United States Supreme Court cases—*i.e.*, *Chaidez v. United States*, 133 S. Ct. 1103 (2013), and *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010)—with the incorrect understanding that the special sentence under § 903B.1 is a "collateral consequence." Petitioner's Supplemental Memorandum at 5–6. In reply, Respondent's Merits Brief explains that "[t]he petitioner's argument concerning *Chaidez*, *Padilla*, and collateral consequences is a red herring. The imposition of the special sentence under Iowa Code Chapter 903B is not a collateral consequence." Respondent's Merits Brief at 28. Because I agree with the Respondent that Iowa courts consider § 903B.1 as a "direct consequence" of a conviction, which I address more fully below, I do not summarize Smith's invalid arguments here.

of a criminal conviction. *Id.* at 6–9. Smith also cited another long passage from the same dissenting opinion because,[8] Smith argued, Justice Snell "believed the Defendant received ineffective assistance [sic] counsel in that matter[.]" *Id.* at 9–11. Without drawing many parallels to the cases from which he quotes, or offering much in terms of analysis, Smith turns to *Williams v. Henderson*, 451 F.Supp. 328, 333 (E.D.N.Y. 1981), where the District Court for the Eastern District of New York determined that a "prosecutor's misconduct made petitioner's trial 'so fundamentally unfair as to deny him due process.'" *Id.* at 11. Smith attempts to analogize his case to *Williams*. *Id.* Smith argues, "Carving Count II from the analysis cannot remove the fundamental unfairness parasitic to an assumption that being advised of a lifetime of supervision related to Count II would not have persuaded Petitioner Smith to change his mind and reject the package plea offer." *Id.* Furthering this argument, Smith asserts that "[t]here is policy disfavoring fragmented consideration of habeas corpus claims." *Id.* (citing *United States ex rel. Sullivan v. Cooper*, 631 F.2d 14, 17 (3d Cir. 1980)).

Finally, Smith likens this case to non-binding authority arising out of the Ninth Circuit, *Riggs v. Fairman*, 399 F.3d 1179 (9th Cir. 2005).[9] In *Riggs*, the attorney

---

[8] Smith's counsel fills almost six pages of Smith's Supplemental Memorandum with quotations from the dissenting opinion in *Carney*, 584 N.W. 2d at 910–913. *See* Petitioner's Supplemental Memorandum at 6–11. Moreover, most of Smith's Supplemental Memorandum is filled with extensive quotations to case law with little analysis and few parallels to this case in furtherance of Smith's claims.

[9] Smith's counsel fills almost three pages of Smith's Supplemental Memorandum with quotations from the opinion of the Ninth Circuit Court of Appeals in *Riggs*, 399 F.3d 1179. *See* Petitioner's Supplemental Memorandum at 12–14. The opinion for *Riggs*, 399 F.3d 1179, was filed on March 7, 2005, following which, on November 30, 2005, it was ordered that the "case be reheard by the en banc court pursuant to Circuit Rule 35-3." *Riggs v. Fairman*, 430 F.3d 1222 (9th Cir. 2005). That order provides as follows: "The three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the en banc court." *Id.* On April 14, 2006, another order was filed that "[p]ursuant to

representing a California *habeas* petitioner charged with shoplifting made several "investigatory omissions." *Riggs*, 399 F.3d at 1183. Based on the attorney's lack of knowledge as to her client's criminal record, she advised "him that his maximum exposure under California law was only nine years and that he should therefore reject the state's offer of a five-year prison term." *Id.* In reality, the *habeas* petitioner's "actual exposure under California's three strikes law was 25-years-to-life." *Id.* For these reasons, the Ninth Circuit Court of Appeals held that "[h]er omission fell below an objective standard of reasonableness." *Id.* As to the prejudice prong, the appellate court held that the *habeas* petitioner "sufficiently demonstrated that counsel's ineffectiveness prejudiced him." *Id.*

Smith argues that, similar to the *habeas* petitioner's counsel in *Riggs*, his counsel "failed to advise him that his plea agreement exposed him to a life punishment." Petitioner's Supplemental Memorandum at 14. Smith concedes that he was exposed to "lifetime supervision," instead of "lifetime incarceration," but he argues that his sanction "still carried a significant loss of liberty for the remainder of his natural life." *Id.* In light of the remedy set forth in *Riggs*, Smith contends that he "should be permitted to return to the pre-plea stage of the prosecution against him." *Id.* at 14–15. He also concludes by reiterating that his Sixth Amendment right "was violated when his trial counsel failed to advise him of a direct statutory consequence of his plea," and his plea, as to all three counts, should be set aside. *Id.* at 15.

### b. *The Report And Recommendation*

On November 7, 2014, Magistrate Judge Strand filed his Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C.

appellant's notice filed March 21, 2006, Appellant Michael Riggs' appeal is DISMISSED pursuant to F.R.A.P. 42(b). Each party is to bear its own costs. The certified copy of the order sent to the district court shall constitute the mandate." *Riggs v. Fairman*, No. CV–00–04266, 2006 WL 6903784 (9th Cir. April 14, 2006).

§ 2254.   After surveying the record, the applicable standards for relief pursuant to § 2254, and the standards applicable to a constitutional claim of ineffective assistance of counsel, Judge Strand analyzed the reasonableness of the determinations of the Iowa Court of Appeals.   He then recommended that I deny Smith's petition.   In his R&R, Judge Strand considered and rejected Smith's arguments that he received ineffective assistance of counsel.   Report at 16.

First, Judge Strand rejected Smith's claim that his counsel provided ineffective assistance by failing to advise Smith of the parole board's requirements for determining parole eligibility.   *Id.*   Judge Strand highlighted that Smith, in his initial brief in support of his petition, "concedes that the first claim was '[n]ot presented to the Iowa state courts.'"   Report at 16 (quoting Brief In Support Of Petition For Writ Of Habeas Corpus (docket no. 51)).   Because Smith did not present this claim to the state court to allow the state court to address the claim in the first instance, the federal court cannot review that claim now.   *See Abdullah v. Groose*, 75 F.3d 408, 411 (8th Cir. 1996) ("We will not review a procedurally defaulted habeas claim because 'a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.'" (quoting *Jones v. Jerrison*, 20 F.3d 849, 853 (8th Cir. 1994) (internal quotation and citation omitted))).   Further, Judge Strand explained that Smith failed to "make the showing that would be necessary to allow review of the first claim despite this defect."[10]   *Id.*   For those reasons, Judge Strand found that Smith's first

---

[10] In making this finding, based on his articulation of the applicable legal standards, Judge Strand suggested that Smith offers no excuse as to why he failed to raise his initial claim in state court, and he does not demonstrate prejudice as a result of the default, or that a fundamental miscarriage of justice occurred.   Report at 15–16; *see also* 28 U.S.C. § 2254(b)(1); *Abdullah*, 75 F.3d at 411; *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("We now make it explicit: In all cases in which a state prisoner

claim "cannot properly be considered in determining whether Smith is entitled to a writ of habeas corpus" because that claim was procedurally barred. *Id.* In a footnote subsequent to that finding, Judge Strand went so far as to conclude that, even if Smith's claim could be considered, it would fail on its merits for the reasons provided by the Respondent. *Id.* (citing Respondent's Merits Brief at 16–22).

Second, Judge Strand rejected Smith's claim that his counsel provided ineffective assistance by failing to inform him of the mandatory lifetime parole requirement under § 903B.1.[11] Report at 18–20. Distinct from Smith's first claim, however, Judge Strand

---

has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). Agreeing with Judge Strand, I limit my analysis below to Smith's second claim that his trial counsel was ineffective because federal *habeas* review of Smith's first claim is barred. *See* Report at 16; *see also* Respondent's Merits Brief at 13–22. Moreover, as Smith concedes, Smith's claim as to his eligibility for parole was not raised in the Iowa state courts. Brief In Support Of Petition For Writ Of Habeas Corpus at 11. Nor was the claim raised in Smith's petition for a writ of *habeas corpus*. However, as Judge Strand pointed out, the Respondent "concede[d] that Smith exhausted the available state remedies regarding his claim based on counsel's failure to inform him of the mandatory lifetime parole requirement." Report at 16 (citing Respondent's Merits Brief at 15–16).

[11] Although not cited to by Judge Strand, the Respondent, or Smith's counsel, I find *Harkins v. Mathes*, No. 10-CV-77, 2013 WL 214255 (N.D. Iowa Jan. 18, 2013), a well-crafted and persuasive opinion by my colleague, Chief Judge Linda R. Reade, of the Northern District of Iowa, worth referencing here. Aside from Judge Strand's R&R, *Harkins* is the only other federal court case that cites to Iowa Code section 903B.1. In *Harkins*, the *habeas* petitioner argued that he was entitled to *habeas corpus* relief because his trial counsel was ineffective for: (1) "*failing to advise him that he would be subject to a special sentence under Iowa Code section 903B.1 if convicted of third-degree sexual abuse*" and (2) "'erroneously telling [the *habeas* petitioner] that DNA testing had confirmed he was a donor of [male] ejaculate recovered from [the] victim.'" *Harkins*, 2013 WL 214255, at *6 (emphasis added). Both the Iowa district and appellate courts determined that, while the *habeas* petitioner's trial counsel did not

noted that the "Respondent concedes that Smith exhausted the available state remedies[,]" and thus, Smith "is entitled to have the merits of that claim considered." *Id.* at 16. Next, Judge Strand recited the applicable two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, in order to challenge a guilty plea based on ineffective assistance of counsel: "[T]he petitioner must show (1) deficiency, that is, counsel's representation fell below an objective standard of reasonableness and (2) prejudice, that is, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 16–17 (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). I turn to review Judge Strand's findings as to each prong of the *Strickland* test.

Regarding the first prong, Judge Strand agreed with the Iowa Court of Appeals that "Smith's counsel's failure to advise Smith of the mandatory lifetime parole term constituted a failure to perform an essential duty, thus satisfying that prong." *Id.* at 18. Judge Strand noted that it was unclear from Respondent's brief whether Respondent contends that the Iowa Court of Appeals erred in this regard. Judge Strand then adopted the appellate court's "finding that Smith's trial counsel performed deficiently." *Id.* at 19. Therefore, by not advising Smith of the mandatory lifetime parole requirement accompanying Count II of Smith's plea agreement, Judge Strand found that Smith's counsel "failed to perform an essential duty." *Id.*

---

inform the petitioner about the special sentence, the petitioner "was not prejudiced by this error." *Id.* at *7. Unlike this case, the *habeas* petitioner in *Harkins* did not raise the claim that his trial counsel failed to advise him of the special sentencing under Iowa Code section 903B.1 when seeking further review of the state court determinations. *Id.* Thus, the *habeas* petitioner did not exhaust all of the available state remedies. For that reason, Chief Judge Reade wrote, "[T]he court need not determine whether the Iowa Court of Appeals' decision was either contrary to or involved an unreasonable application of federal law." *Id.* Nor did the court need to "assess whether the factual determinations underlying the decision were unreasonable in light of the evidence." *Id.*

With regard to the second prong, Judge Strand held that "Smith failed to demonstrate prejudice resulting from his trial counsel's failure to perform an essential duty." *Id.* at 20. In reaching that holding, Judge Strand reasoned that the Iowa Court of Appeals applied the correct standard—*i.e.*, "Smith was required to demonstrate 'a reasonable probability he would not have pled guilty had he been informed of the section 903B.1 sentence'"—and based on that standard, the appellate court determined that Smith did not make that showing. *Id.* at 19 (quoting *Smith*, 2010 WL 4867384 at *4). The appellate court noted that Smith's testimony illustrated that "his first concern, and primary reason for pleading guilty, was to avoid receiving a life prison sentence for a kidnapping charge." *Id.* (citing *Smith*, 2010 WL 4867384 at *5). Judge Strand stressed that the appellate court was convinced that "'the 903B.1 special parole term was, at most, a sidelight, introduced only on leading questioning by counsel.'" *Id.* (quoting *Smith*, 2010 WL 4867384 at *6).

After reiterating that federal courts must presume that any factual determinations made by state courts are correct, Judge Strand noted that Smith failed to present "clear and convincing evidence in the record to rebut this presumption." *Id.* Smith's "self-serving, conclusory argument" that he would not have pled guilty, but for his counsel not properly advising him, was, according to Judge Strand, insufficient to overcome the finding of the Iowa Court of Appeals. *Id.* at 20. Because Smith failed to show that the Iowa Court of Appeals applied the *Strickland* standard unreasonably by "holding that Smith failed to demonstrate prejudice resulting from his trial counsel's failure to perform an essential duty," Judge Strand recommended that Smith's *habeas* petition be denied. *Id.*

## II.    LEGAL ANALYSIS

### A.    *Review Of A Report And Recommendation*

Before considering whether or not to accept Judge Strand's Report and Recommendation, I will first set out my standard of review. The applicable statute provides for *de novo* review by the district judge of a magistrate judge's report and recommendation, when objections are made, as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* FED. R. CIV. P. 72(b) (stating identical requirements). Thus, "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). The United States Supreme Court has explained that, although the statute provides for review when objections are made, the statutory standard does not preclude review by the district court in other circumstances:

> [W]hile the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas*, 474 U.S. at 154. Thus, the specific standard of review may depend upon whether or not a party has objected to portions of the report and recommendation. I will explain what triggers each specific standard of review in a little more detail.

If a party files an objection to a magistrate judge's report and recommendation, the district court must "make a de novo determination *of those portions of the report or*

*specified proposed findings or recommendations to which objection is made*." 28 U.S.C. § 636(b)(1) (emphasis added). In most cases, to trigger *de novo* review, "objections must be timely and specific." *Thompson v. Nix*, 897 F.2d 356, 358-59 (8th Cir. 1990). However, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general *pro se* objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and has also been willing to conclude that general objections require "full de novo review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). When objections have been made, and the magistrate judge's report is based upon an evidentiary hearing, "'the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing.'" *United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) (quoting *Jones v. Pillow*, 47 F.3d 251, 252 (8th Cir. 1995), in turn quoting *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989)). Judge Strand did not hold an evidentiary hearing on the motion, nor did he consider oral arguments on the motion. Instead, he considered only the parties' written submissions, and I have done the same.

In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150; *see also Peretz v. United States*, 501 U.S. 923, 939 (1991) (stating that § 636(b)(1) "provide[s] for de novo review *only* when a party objected to the magistrate's findings or recommendations" (emphasis added)); *United States v. Ewing*, 632 F.3d 412, 415 (8th Cir. 2011) ("By failing to file objections, Ewing waived his right to de novo review [of a magistrate judge's report and recommendation on a suppression motion] by the district court."). Indeed, *Thomas* suggests that no review at

all is required.  *Id*. ("We are therefore not persuaded that [§ 636(b)(1)] requires some lesser review by the district court when no objections are filed.").

Nevertheless, a district court may also review *de novo* any issue in a magistrate judge's report and recommendation at any time.  *Id*. at 154.  This discretion to conduct *de novo* review of any issue at any time makes sense, because the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994).  Also, the Eighth Circuit Court of Appeals has indicated that, at a minimum, a district court should review the portions of a magistrate judge's report and recommendation to which no objections have been made under a "clearly erroneous" standard of review.  *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that, when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting that the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record").  Review for clear error, even when no objection has been made, is also consistent with "retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk*, 15 F.3d at 815.

Although neither the Supreme Court nor the Eighth Circuit Court of Appeals explained precisely what "clear error" review means in this context, in other contexts, the Supreme Court has stated that the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Anderson v. City of Bessemer City*,

470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). I will review Judge Strand's R&R with these standards in mind.

## B.    *Federal Habeas Relief*

Before reviewing Judge Strand's R&R, I will first consider the standards for federal *habeas* relief from a state conviction. I note that the United States Supreme Court has recognized that "[t]here is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus, for it is in such proceedings that a person in custody charges that error, neglect, or evil purpose has resulted in his unlawful confinement and that he is deprived of his freedom contrary to law." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). Indeed, "[h]abeas corpus is one of the precious heritages of Anglo-American civilization." *Fay v. Noia*, 372 U.S. 391, 441 (1963), *overruled on other grounds, Wainwright v. Sykes*, 433 U.S. 72 (1977); *see also McClesky v. Zant*, 499 U.S. 467, 496 (1991) ("The writ of habeas corpus is one of the centerpieces of our liberties.").[12] Nevertheless, it was not until 1867 that Congress extended federal *habeas corpus* to prisoners held in state

---

[12] The Supreme Court has recognized that the power to issue a writ of *habeas corpus* is not necessarily an unalloyed good:

> "But the writ has potentialities for evil as well as for good. Abuse of the writ may undermine the orderly administration of justice and therefore weaken the forces of authority that are essential for civilization." *Brown v. Allen*, [ ] 344 U.S. [443,] 512, 73 S. Ct., at 449 [(1953)] (opinion of Frankfurter, J.).

*McClesky*, 499 U.S. at 498.

custody. *See McClesky*, 499 U.S. at 478.[13] "[T]he leading purpose of federal habeas review [in the case of a state prisoner] is to 'ensur[e] that state courts conduct criminal proceedings in accordance with the [United States] Constitution as interpreted at the time of th[ose] proceedings.'" *Graham v. Collins*, 506 U.S. 561, 467 (1993) (quoting *Saffle v. Parks*, 494 U.S. 484, 488 (1990)).

Notwithstanding its importance, I also note that the United States Supreme Court has explained that "the writ of habeas corpus has historically been regarded as an extraordinary remedy." *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993). Thus, various justices of the Supreme Court have cautioned that "upsetting the finality of judgment should be countenanced only in rare instances." *O'Neal v. McAninch*, 513 U.S. 432, 447 (1995) (Thomas, J., joined by Rehnquist, C.J., and Scalia, J., dissenting). Furthermore, "Congress enacted the AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases, and to further the principles of comity, finality, and federalism." *See Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (internal quotation marks and citations omitted). Therefore, "[t]o obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Metrish v. Lancaster*, 133 S. Ct. 1781, 1783 (2013) (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011)).

In light of these concerns, as explained more fully, below, since the passage of AEDPA, *habeas* review by the federal courts of a state court conviction and the state courts' denial of postconviction relief is limited and, at least ordinarily, deferential.

---

[13] Some of the history of federal *habeas* relief, before and after it was extended to state prisoners, is set out in *Johnson v. United States*, 860 F. Supp. 2d 663, 737 n.23 (N.D. Iowa 2012).

## 1.    "Exhausted" and "adjudicated" claims

### a.    The "Exhaustion" and "adjudication" requirements

The ability of the federal courts to grant *habeas* relief to a state prisoner depends, in the first instance, on whether or not the claim before the federal court has been "exhausted" in the state courts—a requirement found in § 2254(b) long before the AEDPA was enacted.  As the Supreme Court explained four decades ago, "The rule of exhaustion in federal habeas corpus actions is rooted in considerations of federal-state comity." *Preiser v. Rodriguez*, 411 U.S. 475, 491 (1973).

More specifically, the AEDPA provides that federal *habeas* relief cannot be granted to a person in state custody, unless it appears that "the applicant has exhausted the remedies available in the courts of the State," or "there is an absence of available State corrective process," or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).  "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus [in the state court] must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."  *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing this rule as the holding of *Picard v. Connor*, 404 U.S. 270 (1971)).  A federal court has the authority to deny relief on the merits on an unexhausted claim, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."), but it cannot grant relief on such a claim.  *Id.* at § 2254(b)(1).  At least theoretically, "once a state prisoner arrives in federal court with his petition for habeas corpus [asserting properly exhausted claims], the federal habeas statute provides for a swift, flexible, and summary determination of his claim."  *Preiser*, 411 U.S. at 495 (citing 28 U.S.C. § 2243, which provides for preliminary

review of a state prisoner's petition to determine whether it appears from the application that the petitioner is not entitled to relief).

As to the "adjudicated on the merits" requirement, the Supreme Court has held "that, when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, including a federal claim that the defendant subsequently presses in a federal habeas proceeding, the federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits." *Johnson*, 1333 S. Ct. at 1091 (emphasis in the original) (citing *Harrington v. Richter*, 131 S. Ct. 770 (2011)). Similarly, "when a defendant convicted in state court attempts to raise a federal claim, either on direct appeal or in a collateral state proceeding, and a state court rules against the defendant and issues an opinion that addresses some issues but does not expressly address the federal claim in question," the Supreme Court has held "that the federal claim at issue . . . must be presumed to have been adjudicated on the merits by the [state] courts," and that, if the presumption is not adequately rebutted, "the restrictive standard of review set out in § 2254(d)(2) consequently applies." *Id.* at 1091-92.

### b.       *Limitations on relief on "exhausted" claims*

If a claim is "exhausted," then the ability of a federal court to grant *habeas* relief depends on the nature of the alleged error by the state courts. As the Supreme Court explained, "One of the methods Congress used to advance the[ ] objectives [of AEDPA] was the adoption of an amended 28 U.S.C. § 2254(d)," which "places 'new constraint[s] on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.'" *Woodford*, 538 U.S. at 206 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "[Supreme Court] cases make clear that AEDPA in general and

§ 2254(d) in particular focus in large measure on revising the standards used for evaluating the merits of a habeas application." *Id.*

Specifically, as the Supreme Court more recently explained, the power of the federal court to grant relief to a person in state custody on a properly exhausted claim is limited, as follows:

> The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court." 28 U.S.C. § 2254(d). Specifically, if a claim has been "adjudicated on the merits in State court," a federal habeas court may not grant relief unless "the adjudication of the claim—
>
> > "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Ibid.*
>
> Because the requirements of § 2254(d) are difficult to meet, it is important whether a federal claim was "adjudicated on the merits in State court."

*Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013). This is a "difficult to meet . . . and highly deferential standard." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks omitted). This highly deferential standard is appropriate, "because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (internal quotation marks and citations omitted).

## 2. The § 2254(d)(1) standards

### a. The "contrary to" clause

A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d)(1), "if the state court 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1390 (2012) (quoting *Williams*, 529 U.S. at 405)). "A state-court decision will also be contrary to [the Supreme] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at 406. A federal court's belief that it might have reached a different result is not enough to show that the state court decision was "contrary to" established federal law, where the state court applied the correct standard under established Supreme Court law. *Id.*

### b. The "unreasonable application" clause

A state court's decision involves an "unreasonable application" of federal law, within the meaning of § 2254(d)(1), if "'there was no reasonable basis for' the [state court's] decision." *Cullen*, 131 S. Ct. at 1402 (quoting *Richter*, 131 S. Ct. at 786). Thus, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Richter*, 131 S. Ct. at 785 (emphasis in the original) (quoting *Williams*, 529 U.S. at 410).

> [T]his Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." [*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)]. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely

> established by this Court." *Knowles v. Mirzayance*, 556
> U.S. ----, ----, 129 S.Ct. 1411, 1413–14, 173 L.Ed.2d
> 251 (2009) (internal quotation marks omitted).

*Richter*, 131 S. Ct. at 786. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*

Nevertheless, where the rule itself is clearly established, the Supreme Court has recognized two ways in which it can be unreasonably applied:

> First, a state-court decision involves an unreasonable
> application of this Court's precedent if the state court
> identifies the correct governing legal rule from this Court's
> cases but unreasonably applies it to the facts of the particular
> state prisoner's case. Second, a state-court decision also
> involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a
> legal principle from our precedent to a new context where it
> should not apply or unreasonably refuses to extend that
> principle to a new context where it should apply.

*Williams*, 529 U.S. at 407 (O'Connor, J., writing for the majority). The Supreme Court recognized that there were "some problems of precision" with "unreasonable application" as to extension or failure to extend a clearly established rule to a new context:

> *Just as it is sometimes difficult to distinguish a mixed*
> *question of law and fact from a question of fact, it will often*
> *be difficult to identify separately those state-court decisions*
> *that involve an unreasonable application of a legal principle*
> *(or an unreasonable failure to apply a legal principle) to a*
> *new context.* Indeed, on the one hand, in some cases it will
> be hard to distinguish a decision involving an unreasonable
> extension of a legal principle from a decision involving an
> unreasonable application of law to facts. On the other hand,
> in many of the same cases it will also be difficult to
> distinguish a decision involving an unreasonable extension of
> a legal principle from a decision that "arrives at a conclusion
> opposite to that reached by this Court on a question of law,"

*supra*, at 1519. Today's case does not require us to decide how such "extension of legal principle" cases should be treated under § 2254(d)(1). *For now it is sufficient to hold that when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying § 2254(d)(1) may conclude that the state-court decision falls within that provision's "unreasonable application" clause.*

*Williams*, 529 U.S. at 408-09 (O'Connor, J., writing for the majority) (emphasis added).

### c.    The effect of § 2254(d)(1) deficiencies in the state court decision

Even if a petitioner establishes that the state court's determination was "contrary to" or an "unreasonable application of" federal law, within the meaning of § 2254(d)(1), that determination does not, standing alone, entitle the petitioner to relief. Rather, it only entitles the petitioner to *de novo* consideration by the federal court of his or her *underlying constitutional claim* for postconviction or *habeas* relief. *See Johnson*, 133 S. Ct. at 1097 ("Even while leaving 'primary responsibility' for adjudicating federal claims to the States, AEDPA permits de novo review in those rare cases when a state court decides a federal claim in a way that is 'contrary to' clearly established Supreme Court precedent." (internal citations omitted)); *Lafler*, 132 S. Ct. at 1390-91 (holding that, where the state court's decision was "contrary to" clearly established federal law, because it failed to apply the *Strickland* standards to an ineffective assistance of counsel claim, the federal court "can determine the principles necessary to grant relief" and apply them to the facts of the case); *Richter*, 131 S. Ct. at 770 (stating that § 2254(d)(1)'s exception "permit[s] relitigation where the earlier state decision resulted from an 'unreasonable application of' clearly established federal law"); *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007) (stating that, when the state court's adjudication was "contrary to" Federal law, within the meaning of

§ 2254(d)(1), "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (performing the analysis required under *Strickland*'s "prejudice" prong without deferring to the state court's decision, because the state court's resolution of *Strickland*'s "deficient performance" prong involved an "unreasonable application" of federal law, and the state court had considered the "deficient performance" prong dispositive).

### 3. The § 2254(d)(2) standard

Just as the "contrary to" and "unreasonable application of" clauses of § 2254(d)(1) have "independent meaning," *see Williams*, 529 U.S. at 405, the "unreasonable determination" clause of § 2254(d)(2) also involves separate considerations, related not to established federal law, but to sufficiency of the evidence. Section 2254(d)(2) provides for relief from a state court denial of postconviction relief, if the state court proceedings "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Again, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (applying this question to both the "unreasonable application" clause in § 2254(d)(1) and the "unreasonable determination" clause in § 2254(d)(2)). Thus, the federal court must "presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). "The standard is demanding but not insatiable; as [the Court] said . . . , '[d]eference does not by definition preclude relief.'" *Id.* (quoting its prior decision in the same case, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

### 4. De novo review of issues not reached by the state court

A federal court may also review *de novo* an element of a state prisoner's constitutional claim that the state court did not reach at all, because the state court found another element to be dispositive of the prisoner's claim. *See Porter v. McCuollum*, 558 U.S. 30, 38 (2009) (stating, "Because the state court did not decide whether Porter's counsel was deficient, we review *this element* of Porter's *Strickland* claim *de novo*," and also finding that the state court's determination that there was no prejudice was an unreasonable application of *Strickland* (emphasis added)); *Cone v. Bell*, 556 U.S. 449, 472 (2009) (reviewing *de novo* the state prisoner's *Brady* claim, because the state courts did not reach the merits of that claim); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice, App. 265, 272–273, and so we examine *this element* of the *Strickland* claim *de novo*." (emphasis added)); *Wiggins*, 539 U.S. at 534 ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence. In this case, our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis.").

### C. "Clearly Established Federal Law" Regarding Ineffective Assistance Of Counsel

Smith's objections to Judge Strand's R&R all relate to Judge Strand's analysis of the state appellate court's disposition of his constitutional claim of ineffective assistance of counsel. Before considering these objections, I must first "identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall*, ___ U.S. at ___, 133 S. Ct. at 1449 (explaining that this is the starting point for cases subject to § 2254(d)(1)); *Williams*, 529 U.S. at 412 (same); *Knowles*, 556 U.S. at 122 (same).

## 1.    *The Strickland Standard*

The Supreme Court has explained that "[t]he right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, ___ U.S. ___, ___, 132 S. Ct. 1399, 1404 (2012) (citing *Strickland*, 466 U.S. at 686).    In the context of a claim of ineffective assistance of counsel, the Supreme Court has concluded that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams*, 529 U.S. at 391.    More specifically, "[t]o prevail on [an ineffective assistance of counsel] claim, [the petitioner] must meet both the deficient performance and prejudice prongs of *Strickland*, 466 U.S. at 686, 104 S. Ct. 2052." *Wong v. Belmontes*, 558 U.S. 15, 16 (2009) (*per curiam*).    The Supreme Court has explained that

> "'[s]urmounting *Strickland*'s high bar is never an easy task.'" *Richter*, *supra*, at ----, 131 S. Ct., at 788 (quoting *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S. Ct. 1473, 1484, 176 L.Ed.2d 284, (2010)). The *Strickland* standard must be applied with "scrupulous care." *Richter*, *supra*, at ----, 131 S. Ct., at 788.

*Cullen*, 131 S. Ct. at 1408.

Although the *Strickland* analysis is "clearly established federal law," and the petitioner must prove both prongs of that analysis to prevail, the Supreme Court does not necessarily require consideration of *both* prongs of the *Strickland* analysis in every case, nor does it require that the prongs of the *Strickland* analysis be considered in a specific order.    As the Court explained in *Strickland*,

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, *there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.* In particular, a court need not determine whether counsel's

> performance was deficient before examining the prejudice
> suffered by the defendant as a result of the alleged
> deficiencies. The object of an ineffectiveness claim is not to
> grade counsel's performance. If it is easier to dispose of an
> ineffectiveness claim on the ground of lack of sufficient
> prejudice, which we expect will often be so, that course
> should be followed.

*Strickland*, 466 U.S. at 697 (emphasis added).[14]

I will consider the two prongs of the *Strickland* analysis in a little more detail, before turning to analyze Smith's objections to Judge Strand's R&R.

### 2.    *Strickland's "deficient performance" prong*

"The performance prong of *Strickland* requires a defendant to show '"that counsel's representation fell below an objective standard of reasonableness."'" *Lafler*, 132 S. Ct. at 1384 (quoting *Hill*, 474 U.S. at 57, in turn quoting *Strickland*, 466 U.S. at 688); *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 688). To put it another way, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 687)).

---

[14] Although the Court in *Strickland* found that it was only necessary to consider the "prejudice" prong, so that it did not reach the "deficient performance" prong, the Eighth Circuit Court of Appeals has repeatedly held that it need not consider the "prejudice" prong, if it determines that there was no "deficient performance." *See, e.g.*, *Gianakos v. United States*, 560 F.3d 817, 821 (8th Cir. 2009) ("'We need not inquire into the effectiveness of counsel, however, if we determine that no prejudice resulted from counsel's alleged deficiencies." (quoting *Hoon v. Iowa*, 313 F.3d 1058, 1061 (8th Cir. 2002), in turn citing *Strickland*, 466 U.S. at 697)); *Ringo v. Roper*, 472 F.3d 1001, 1008 (8th Cir. 2007) ("Because we believe that the Missouri Supreme Court did not unreasonably apply *Strickland* when it determined that counsel's decision not to call Dr. Draper fell within the wide range of reasonable professional assistance, we need not consider whether counsel's decision prejudiced Mr. Ringo's case."); *Osborne v. Purkett*, 411 F.3d 911, 918 (8th Cir. 2005) ("Because Osborne did not satisfy the performance test, we need not consider the prejudice test.").

In evaluating counsel's performance, the reviewing court must not overlook "'the constitutionally protected independence of counsel and . . . the wide latitude counsel must have in making tactical decisions.'" *Cullen*, 131 S. Ct. at 1406 (quoting *Strickland*, 466 U.S. at 589). Thus,

> [b]eyond the general requirement of reasonableness, "specific guidelines are not appropriate." [*Strickland*, 466 U.S.], at 688, 104 S. Ct. 2052. "No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions ...." *Id.*, at 688–689, 104 S. Ct. 2052. *Strickland* itself rejected the notion that the same investigation will be required in every case. *Id.*, at 691, 104 S. Ct. 2052 ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" (emphasis added)). It is "[r]are" that constitutionally competent representation will require "any one technique or approach." *Richter*, 562 U.S., at ––––, 131 S. Ct., at 779.

*Id.* at 1406-07.

The *Strickland* standard of granting latitude to counsel also requires that counsel's decisions must be reviewed in the context in which they were made, without "the distortions and imbalance that can inhere in a hindsight perspective." *Premo v. Moore*, 131 S. Ct. 733, 741 (2011); *see also id.* at 745 (reiterating that "hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed" (citing *Richter*, 131 S. Ct. 770)); *Rompilla v. Beard*, 545 U.S. 374, 381 (2005) ("In judging the defense's investigation, as in applying *Strickland* generally, hindsight is discounted by pegging adequacy to 'counsel's perspective at the time' investigative decisions are made, 466 U.S., at 689, 104 S. Ct. 2052, and by giving a 'heavy measure of deference to counsel's judgments,' *id.*, at 691, 104 S. Ct. 2052."). This is so, because "[u]nlike a later reviewing court,

the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge," and because "[i]t is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Richter*, 131 S. Ct. at 788 (quoting *Strickland*, 466 U.S. at 689, and also citing *Bell v. Cone*, 535 U.S. 685, 702 (2002), and *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In short, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Furthermore,

> *Strickland* specifically commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." 466 U.S., at 689–690, 104 S. Ct. 2052. The [reviewing court] [i]s required not simply to "give [the] attorneys the benefit of the doubt," but to affirmatively entertain the range of possible "reasons [trial] counsel may have had for proceeding as they did."

*Cullen*, 131 S. Ct. at 1407 (internal citations to the lower court opinion omitted); *Richter*, 131 S. Ct. at 787 ("A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (quoting *Strickland*, 466 U.S. at 689)).

### 3. *Strickland's "prejudice" prong*

"To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). The Court has explained more specifically what a "reasonable probability" means:

> "A reasonable probability is a probability sufficient to undermine confidence in the outcome." [*Strickland*, 466 U.S. at 694]. That requires a "substantial," not just "conceivable," likelihood of a different result. *Richter*, 562 U.S., at ----, 131 S. Ct., at 791.

*Cullen*, 131 S. Ct. at 1403. Ultimately, a showing of "prejudice" requires counsel's errors to be "'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

### 4. Smith's Objections

I turn now to take up Smith's three pages of objections to Judge Strand's R&R. *See* Petitioner's Objections To Report And Recommendation On Petition For Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 (docket no. 89). Smith's objections consist primarily of the same arguments presented in his Supplemental Memorandum In Support Of 2254 Application. Smith agrees with Judge Strand's R&R that Smith's "trial counsel's performance was deficient for failing to advise him of the consequence of lifetime parole pursuant to Iowa Code § 903B.1." Petitioner's Objections at 1. Smith takes issue with Judge Strand's conclusion, however, that he did not meet his burden of showing "prejudice under the *Strickland* standard." *Id.*

According to Smith, Judge Strand and the Iowa Court of Appeals appear to "parcel[] out the provisions applicable to Count II as not affecting Smith's decision to plead guilty." *Id.* Smith argues that the mandatory lifetime parole—*i.e.*, a matter of significant consequence—would have factored into Smith's decision as to whether to accept a plea offer. *Id.* at 2. Also, a kidnapping charge is not supported by the record. "As such, Smith's testimony at the post-conviction trial that he would not have pled guilty had he been aware of the lifetime parole provision is credible," writes Smith. *Id.*

In addition, Smith, again, analogizes this case to *State v. Carney*, 584 N.W.2d 907 (Iowa 1998), and *Riggs v. Fairman*, 399 F.3d 1179 (9th Cir. 2005). In reference

to *Carney*, Smith admits that while the mandatory lifetime parole is "[a]lbeit a collateral consequence by definition, it is a real and experienced consequence Smith has to deal with for the remainder of his life." *Id.* Therefore, in Smith's words, "[i]n pragmatic application, it is a direct consequence to Smith." *Id.* In reference to *Riggs*, Smith contends that this case, like *Riggs*, involves trial counsel that did not "adequately describe potential consequences in the plea bargaining process." *Id.* As in *Riggs*, Smith argues that there was a constitutional violation in this case, which demonstrates prejudice. *Id.*

Finally, Smith requests, without citing to any case law or other relevant authority to support his request, that I determine that "once a parties' Constitutional rights (here the Sixth Amendment right to effective representation by counsel) concerning one portion of their plea, or the plea bargaining process are violated, that the entire plea process should be invalidated." *Id.* at 2–3. If I were to reach a contrary ruling, according to Smith, then that would be akin "to a position that only a portion of milk can be spoiled or that a poisonous apple can only be partially harmful." *Id.* at 3. In sum, Smith requests that I find, contrary to the Iowa Court of Appeals and Judge Strand, that he established both prongs of the *Strickland* test, and return him to his "pre-plea portion of his State court proceeding." *Id.*

### 5.    Analysis

At last, I turn to analyze the two-part *Strickland v. Washington* test, which, based on *Hill v. Lockhart*, 474 U.S. 52 (1985), is applicable "to ineffective-assistance-of-counsel claims arising out of the plea process." *See Hill*, 474 U.S. at 57; *see also Lafler*, 132 S. Ct. at 1384 (noting that "[d]efendants have a Sixth Amendment right to counsel, a right that extends to the plea bargaining process" (citing *Frye*, 132 S.Ct. at 1386–87))). In his R&R, Judge Strand construed Smith's arguments in seeking federal *habeas* relief as follows: "Smith asserts that by allowing his guilty plea to stand and not

41

returning his case to the pre-plea stage, the Iowa Court of Appeals unreasonably applied federal law regarding ineffective assistance of counsel with regard to guilty pleas." Report at 18. Upon review of the decision of the Iowa Court of Appeals, I disagree with Smith's arguments. Judge Strand was right in finding that the Iowa Court of Appeals reasonably applied the standard set forth in *Strickland v. Washington* and *Hill v. Lockhart* to address Smith's ineffective-assistance-of-counsel claim.[15]   *See* Report at 19–20; *see also* Respondent's Merits Brief at 23. I turn to explain why the application of the *Strickland* test by the Iowa Court of Appeals was not "contrary to" or an "unreasonable application" of federal law. *See Johnson*, 133 S. Ct. at 1091.

In order to meet the first prong of the *Strickland* test, in the context of guilty pleas, a defendant "'must show that counsel's representation fell below an objective standard of reasonableness.'" *Hill*, 474 U.S. at 57 (quoting *Strickland*, 466 U.S. at 687–88). As Judge Strand rightly pointed out in his R&R, a defense attorney must advise her client of the "direct consequences" of pleading guilty, but it is not necessary to inform the defendant of all of the "indirect" or "collateral consequences." Report at 17 (citing *United States v. Degand*, 614 F.2d 176, 177–78 (8th Cir. 1980); *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984), in turn citing *Brady v. United States*, 397

---

[15] Like the standard in *Strickland*, the Iowa Court of Appeals set forth this standard for determining whether Smith's ineffective-assistance-of-counsel claim had merit: "To succeed on an ineffective-assistance-of-counsel claim, an applicant has the burden to prove by a preponderance of the evidence that: '(1) counsel failed to perform an essential duty; and (2) prejudice resulted.'" *Smith*, 2010 WL 4867384 at *4 (quoting *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010) (quoting *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008)). Subsequently, the state appellate court applied the correct standard, similar to the standard set forth in *Hill*, relating to the establishment of prejudice in the context of a guilty plea: "[P]rejudice, i.e., that there was a reasonable probability he would not have pled guilty had he been informed of the section 903B.1 sentence." *See id.* (citing *State v. Hallock*, 765 N.W.2d 598, 606 (Iowa Ct. App. 2009); *State v. Straw*, 709 N.W.2d 128, 137 (Iowa 2008)).

U.S. 742, 755 (1970)).  The Eighth Circuit Court of Appeals has explained the distinction between "direct" and "collateral" consequences:

> "The distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Cuthrell v. Director, Patuxent Institution*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973); *United States v. Lambros*, [544 F.2d 962, 966 (8th Cir. 1976)].

*George*, 732 F.2d at 110.

Here, Smith was not informed of the special sentence mandated by Iowa Code section 903B.1 due to his sex abuse conviction.  That special sentence had a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *See id.* (noting that civil commitment following incarceration "is not definite, automatic, or immediate, especially *when it is compared to a mandatory special parole term.  The latter is mandatory and must be included in the sentence imposed by the trial judge*; the former may be imposed by an entirely different body at a different time after a different set of proceedings with a different burden of proof.") (emphasis added); *see also* Order Granting New Trial (referring to Smith's special sentence of § 903B.1 as a "direct consequence").  Because Dryer failed to inform Smith of a "direct consequence" of his plea, alert the court to her omission, or file a motion in arrest of judgment, it was not unreasonable for the Iowa Court of Appeals to find, in agreement with the state district court, that Dryer failed to perform an essential duty.  *Smith*, 2010 WL 4867384 at *4.

In reaching the above decision, the Iowa Court of Appeals also noted, "The State does not challenge the district court's finding that Smith's trial counsel failed to perform an essential duty."  *Id.*  Upon review of the parties' briefs, Judge Strand

similarly noted that "[i]t is not entirely clear, from Respondent's brief, whether Respondent contends that the Iowa Court of Appeals erred in finding that Smith satisfied the first *Strickland* prong." Report at 19. To date, the Respondent has failed to file any objections to Judge Strand's R&R, or respond to Smith's objections, to clarify whether this issue is a point of contention.[16] As I explained above, in the absence of an objection from the Respondent as to one of Judge Strand's findings in his R&R, I am not required "to give any more consideration to the magistrate's report" than I deem "appropriate." *Thomas*, 474 U.S. at 150.

In this case, I am convinced that Judge Strand's finding as to the application of the first *Strickland* prong by the Iowa Court of Appeals is not "clearly erroneous." *See Grinder*, 73 F.3d at 795 (8th Cir. 1996). Rather, in agreement with the Iowa Court of Appeals and Judge Strand, I find that Smith's counsel failed to perform an essential duty by not advising Smith about this part of his sentence, which was not "the result of reasonable professional judgment." Report at 19; *see also Smith*, 2010 WL 4867384 at *4; *Strickland*, 466 U.S. at 690 ("A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."). Therefore, the Iowa Court of Appeals, in determining that Smith met the first prong of the *Strickland* test, did not unreasonably apply *Strickland*, or apply a rule contrary to *Strickland*.

The "real issue here," as Judge Strand noted, is whether Smith established "prejudice," or more precisely, whether "the Iowa Court of Appeals reasonably

---

[16] The Respondent does recognizes that "[t]he Iowa [appellate] court ruled that no part of the plea needed to be vacated *on counsel's breach of an essential duty* because the petitioner had not proven that but for counsel's error he would have gone to trial and not pled guilty." Respondent's Merits Brief at 27 (citing *Smith*, 2010 WL 4867384 at 712) (emphasis added). Moreover, Respondent does not seem to take issue with the Iowa appellate court's finding as to the first prong of the *Strickland* test.

appl[ied] federal law in concluding that Smith failed to show prejudice[.]" Report at 19. To establish the "prejudice" prong, in the context of the plea process, Smith had to show that there was "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In analyzing whether Smith would have pleaded guilty, I must apply a subjective, not objective, analysis. *See Wanatee v. Ault*, 259 F.3d 700, 704 (8th Cir. 2001). There are several factors in the record that persuade me to find that the Iowa Court of Appeals—in deciding that Smith did *not* meet his burden of proving the second prong of the *Strickland* test—did not unreasonably apply *Strickland* or apply a rule contrary to *Strickland*. *See Craft v. Iowa*, No. 13cv117, 2015 WL 1304435, at *3 (N.D. Iowa March 23, 2015) (noting that, in order to show *Strickland* prejudice, the *habeas* petitioner "bears the burden to prove he would not have pleaded guilty if counsel had performed competently" (citing *Hill*, 474 U.S. at 52))).

First, as the Iowa Court of Appeals found, Smith was never concerned about the years of *parole* he would face when he pleaded guilty, but rather, the "years of *incarceration* he would face." *Smith*, 2010 WL 4867384 at *6. Moreover, Smith's guilty plea was not based on a belief that he would not face parole; it was based on his wish to avoid the possibility of a life sentence.[17] If the State decided to bring a second

---

[17] Smith's testimony at his postconviction hearing indicates that he now seeks to withdraw his plea of guilty and return to the negotiating stage because, in his view, the State did not have a case for first-degree kidnapping. However, as the Eighth Circuit Court of Appeals has explained: "'A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.'" *Hale v. Lockhart*, 903 F.2d 545, 551 (1990) (quoting *Brady*, 397 U.S. at 757)). If Smith had gone to trial, he ran the risk of being sentenced to life imprisonment, and the Iowa Court of Appeals determined that was the primary reason Smith pleaded guilty. *Smith*, 2010 WL 4867384, at *6.

trial against Smith and charge him with first-degree kidnapping,[18] and he were found guilty of a first-degree kidnapping charge, he would have received "a lifetime sentence *without parole*." *Id.* at *5 (emphasis added). Smith never impressed on his trial counsel, the court, or the prosecutor the importance of not being on parole to his decision to plead guilty. *Cf. Garmon v. Lockhart*, 938 F.2d 120, 122 (8th Cir. 1991) (agreeing with "the [federal] district court that in this case [the *habeas* petitioner] impressed on his trial counsel the importance of parole eligibility to his decision to plead guilty, and [the *habeas* petitioner] would have pleaded not guilty and insisted on going to trial but for counsel's erroneous advice," and holding federal district court properly found that *habeas* petitioner was denied effective assistance of counsel). Based on the record, it seems Smith recognized the compelling case against him after his victim began testifying, realized his chances for an acquittal were slim, and therefore, chose to plead guilty. I also note that the prosecutor gave a persuasive opening statement, which illustrated the strength of the evidence confronting Smith. She referred to the witnesses that would testify and the taped conversations of Smith with the victim, during which Smith allegedly apologized to and requested the victim to "change her story." Tr. at 45. All of which may have factored into Smith's decision to plead guilty during his victim's direct examination.

---

[18] Prior to trial, the state prosecutor indicated to Smith's counsel, that based on her deposition of the alleged victim, the "State very well may also pursue kidnapping charges." Tr. at 4. At that time, Smith's counsel explained to Smith that "first degree kidnapping could be a potential life sentence[.]" *Id.* Yet, the State never actually charged Smith with first-degree kidnapping in the Information, which was recited at the beginning of Smith's trial, and it seems that the prosecutor only intended to bring a first-degree kidnapping charge if Smith were found not guilty at his first trial. *Id.* at 35–36. To be clear, Smith pleaded guilty to the same three charges set forth in his Information: first-degree burglary, sexual abuse in the third-degree, and domestic abuse assault causing injury.

Second, what was said at Smith's plea colloquy weighs against a finding that Smith would have insisted on going to trial, even with the knowledge of the § 903B.1 special sentence. For example, at his plea colloquy, Smith testified in open court that "he was pleading guilty in order to avoid a first-degree kidnapping charge and the lifetime prison sentence that would result if he were convicted thereon."[19] *Smith*, 2010

---

[19] More exactly, I reviewed Smith's record, and here is the dialogue between Smith and the state district court judge at his plea hearing:

> THE COURT: And are you asking me to accept your plea both because you are guilty and because of the plea offer that you've received?

> THE DEFENDANT: I don't want no life sentence so I'm asking you to accept my plea offer.

> THE COURT: All right. And is that because of what you have to gain by a plea and what you might have to lose if you had continued with the trial?

> THE DEFENDANT: If I had continued with the trial, if I had gone to trial, you know, I'm still going to be facing a life sentence, so what do I got to lose?

Tr. at 128. Later in the record, during Smith's sentencing hearing, he said,

> THE DEFENDANT: The reason I'm pleading guilty to this incident here, you know, you know what I'm saying, because, you know, Mrs. Fangman [an Assistant Black Hawk County Attorney] is saying to me that if I had participated with my trial and I had—if I was found not guilty she was still going to file a first degree kidnapping on me, you know. And, you know, I can't see how I could win either way, you know. If I beat my case, I'm still going to be up against a life sentence, you know, so if I didn't take the plea bargain, you know, I can't—it ain't no way that I could have came out—came out of this, you know.

47

WL 4867384 at *2.  He twice indicated at his plea colloquy that he was pleading freely and without any threats.  Tr. at 123–124, 132.  It is also noteworthy that, although the trial court judge failed to advise Smith of the mandatory lifetime supervision under § 903B.1 during Smith's plea colloquy, the trial judge did inform Smith that "he would have to take a batterer's education class, register as a sex offender, and pay a civil penalty."  *Smith*, 2010 WL 4867384 at *2.  Yet, Smith pleaded guilty anyway.  The additional sanctions of registering as a sex offender and paying the associated civil

---

THE COURT: Well, you could have gotten a not guilty on the second trial.  You understand that?

THE DEFENDANT: Yeah, but I've been down here since April the 5th sitting in jail in front of $100,000 bond and on my parole hold I got a no bond, so I've already been down here for 90 days so I've got to sit over here another 90 days on another trial.  I'll just go and get it over with.

THE COURT: You understand, however, that you're giving up your rights?

THE DEFENDANT: I know I gave those up.

THE COURT: All right.

THE DEFENDANT: But, you know, I'm a long ways from being, you know, illiterate or anything, you know.  I know the repercussions behind this here incident and everything, see.

THE COURT: All right.  Anything else?

THE DEFENDANT: That's it.

Tr. at 134–36.

penalty—both sanctions accompanied Smith's decision to plead guilty to sexual abuse—did not compel Smith to reject the plea offer and proceed to trial. Tr. at 137.

Third, as Judge Strand and the Iowa Court of Appeals also noted, Smith's testimony and Dryer's testimony at Smith's postconviction relief hearing on September 28, 2009, support the finding that Smith would still have pleaded guilty even if he was properly advised. Report at 20; *see also Smith*, 2010 WL 4867384 at *5–*6. At the risk of being repetitive, I refer to part of Smith's testimony from his postconviction relief hearing, which was discussed above:

> Q. Do you recall during the plea colloquy with the judge at the time of your plea that you told him the reason you were pleading and the reason you took the plea offer is because you didn't want any life sentence so you were asking the court to accept your plea offer?
>
> A. Yeah. I do recall that. Anybody in their right mind would accept the plea bargain if they thought they was going to get a First Degree Kidnapping. They were illiterate to the law as I was at that time. I'm not illiterate to the law anymore. I know my constitutional rights now.

*See Smith*, 2010 WL 4867384 at *5; *see also* Report at 9–10. Smith's self-serving allegations that he would not have pleaded guilty contradict his testimony and his counsel's testimony at Smith's postconviction relief hearing.[20] Accordingly, like the

---

[20] I disagree with Smith's testimony at his postconviction relief hearing that the State did not have a strong first-degree kidnapping case against him. Upon review of a factually similar case, *State v. Tryon*, 431 N.W.2d 11 (Iowa App. 1988), it seems the State *did* have sufficient evidence to establish that Smith committed first-degree kidnapping based on Wynter's testimony at his trial alone. As in this case, the defendant in *Tryon* had a prior relationship with the victim—*i.e.*, they had a friendship, and the victim was married to the defendant's friend—before the first-degree kidnapping occurred. In *Tryon*, the defendant, like Smith, confined his victim in her own home and subjected her to physical and sexual abuse. In analyzing whether there was sufficient evidence presented in *Tryon* to generate a jury question on the issue of

Iowa Court of Appeals, I am unconvinced that "the lifetime special parole term would have been a dealbreaker" for Smith. *Smith*, 2010 WL 4867384 at *5.

I now turn to consider Smith's case citations and arguments in furtherance of his objections to Judge Strand's R&R. In reference to the dissenting opinion in *Carney*, as noted above, Smith wrongly asserts that the special sentence under § 903B.1. is a "collateral consequence by definition[.]" Petitioner's Objections at 2. Smith's reliance on *Carney* is misplaced. As was gleaned by the Iowa Court of Appeals, in Smith's case, "A section 903B.2 sentence is *not merely collateral, but is part of a sentence* and,

---

confinement, the Iowa Court of Appeals cited to Iowa Code section 710.1, which defines kidnapping. I refer to the current version of the statute here:

> A person commits kidnapping when the person either *confines a person or removes a person from one place to another*, knowing that the person who confines or removes the other person has *neither the authority nor the consent of the other to do so*; provided, that to constitute kidnapping the act must be accompanied by one or more of the following:
>
> . . .
>
> 3. The intent to inflict serious injury upon such person, or *to subject the person to a sexual abuse* . . .

*See* IOWA CODE § 710.1 (emphasis added). Also, the appellate court cited Iowa Code section 710.2, which defines kidnapping in the first-degree. I refer to the current version of the statute here:

> Kidnapping is kidnapping in the first degree when the person kidnapped, as a consequence of the kidnapping, suffers serious injury, or *is intentionally subjected to torture or sexual abuse*.

*See* IOWA CODE § 710.2 (emphasis added). Like the defendant's confinement of his victim in *Tryon*, Smith prevented his victim from escaping or notifying others of her abuse. *Tryon*, 431 N.W.2d at *14. Smith's confinement of his victim facilitated his sexual abuse, but had significant independence as it significantly increased the risk of harm to the victim, lessened Smith's risk of detection, and facilitated his escape. *Id.*

thus, the defendant must be informed of the provision before the court accepts a guilty plea." *Smith*, 2010 WL 4867384 at *4 (citing *State v. Hallock*, 765 N.W.2d 598, 605 (Iowa Ct. App. 2009) (emphasis added). For further proof that the sentencing provision in Iowa Code section 903B.1, like the sentencing provision in Iowa Code section 903B.2, is a direct consequence, let me consider the specific statute at issue.

The subchapter for § 903B.1 is entitled "Special Sentencing," the specific provision is entitled "Special sentence--Class 'B' or class 'C' felonies," and applying the special sentence could lead to an additional term of imprisonment for Smith, which is definite, immediate, and largely automatic in result on Smith's range of punishment. *See Hallock*, 765 N.W.2d at 605. Even the Respondent recognized that the special sentence under § 903B.1 is not a "collateral consequence," but rather a "direct consequence of [Smith's] conviction." Respondent's Merits Brief at 28. Therefore, as indicated above, I find the special sentencing provision of § 903B.1 is a "direct consequence" of Smith's conviction and his counsel had a duty to inform him of it. While my finding on this issue favors Smith, he failed to prove his ineffective-assistance-of-counsel claim because he did not show how such lack of knowledge constituted prejudice. Nor does the dissenting opinion in *Carney*, 584 N.W.2d 907, in my judgment, add much weight to Smith's claims. Indeed, *Carney* stands as negative authority to Smith's position: the majority's opinion determined that counsel was *not* ineffective for failing to inform the defendant of the collateral, not direct, consequence of license revocation prior to pleading guilty. *Carney*, 584 N.W.2d at 910.

In addition, the facts of *Riggs*, another case relied upon by Smith, are markedly distinct from the facts of this case.[21] In *Riggs*, the Ninth Circuit Court of Appeals

---

[21] If Smith were seeking to cite a more factually analogous case from the Ninth Circuit, he needed to look no further than a case with his own surname in the caption—*Smith v. YLST*, 47 F.3d 1176, 1995 WL 72329 (9th Cir. 1995) (unpublished op.). In

found that the performance of the petitioner's counsel was deficient and that counsel's performance prejudiced the defendant. *Riggs*, 399 F.3d at 1183. However, unlike the procedural history in this case, there was "no state determination addressing [the petitioner's] ineffective assistance of counsel claim," and thus, the Ninth Circuit Court of Appeals undertook an "'independent review of the record.'" *Id.* at 1182. Also, in *Riggs*, the petitioner's counsel advised her client that he should reject the State's offer of a five-year prison term because he was only exposed, under California law, to nine years in prison. *Id.* at 1183. In truth, the petitioner's "actual exposure under California's three strikes law was 25-years-to-life." *Id.* Thus, the Ninth Circuit Court of Appeals found that the attorney's investigatory omission "fell below an objective standard of reasonableness." *Id.* In addition, the appellate court concluded that the petitioner "sufficiently demonstrated that counsel's ineffectiveness prejudiced him." *Id.* This is because the petitioner "credibly testified that he would have accepted the five-

---

*Smith*, Smith's trial counsel "never objected to the imposition of the life parole term, never advised Smith about the significance of parole, and never informed Smith that because of the variance in the parole term, Smith could withdraw his plea." *Smith*, 1995 WL 72329, *1. Based on these errors, Smith decided to bring "a habeas action alleging ineffective assistance of counsel." *Id.* Smith argued that he was prejudiced by his trial counsel's ineffective assistance, which caused him to plead guilty instead of proceeding to trial. *Id.* The Ninth Circuit Court of Appeals affirmed the district court's decision, finding that "Smith did not suffer any prejudice from trial counsel's ineffective assistance." *Id.* (Because Smith was unable to show he suffered prejudice, the Ninth Circuit Court of Appeals did not address the deficiency issue.) In reaching its decision, the appellate court was persuaded by the fact that "Smith never discussed his parole term with his attorney either before, during, or after his decision to plead guilty," and at Smith's sentencing hearing "Smith made no comment or statement regarding the lifetime parole term." *Id.* at *2. Similar to the facts presented, here, the only evidence Smith presented that he would have gone to trial was "his own testimony." *Id.* That testimony "was of little value because it was 'self-serving and subjective.'" *Id.* Also, like the *habeas* petitioner's unreliable testimony in this case, Smith's testimony was "belied by the fact that he did not risk incurring five to ten more years of prison time by going to trial and being convicted of first degree murder." *Id.*

year plea sentence offered by the prosecution if he had known that his maximum exposure was a sentence of 25-years-to-life." *Id.*

I disagree with Smith's argument that, like the *habeas* petitioner's counsel in *Riggs*, his counsel "failed to advise him that his plea agreement exposed him to a life punishment." Petitioner's Supplemental Memorandum at 14. Smith is hard pressed to make the case that a lifetime of supervision, here, is analogous to a lifetime of imprisonment in *Riggs*, regardless of the liberties lost by supervision. The distinctions between trial counsel's failures in *Riggs* and trial counsel's failures in this case are also stark. Aside from Dryer's failure to inform Smith of the special sentence pursuant to § 903B.1, nothing in the record suggests that Dryer made any other significant investigatory omissions or failed to provide otherwise competent advice.

Additionally, unlike the petitioner in *Riggs*, the district court in this case found that Smith was not a credible witness. As the Iowa Court of Appeals noted, "[T]he court elsewhere found Smith's testimony 'not believable.' It rejected Smith's postconviction testimony in every other meaningful aspect. It found credible Dryer's testimony that Smith wanted to plead guilty after hearing the victim's direct testimony." *Smith*, 2010 WL 4867384, *6. Therefore, it was not unreasonable for the Iowa Court of Appeals to discredit Smith's self-serving allegation that he would not have pleaded guilty if he were aware of the mandatory lifetime parole under § 903B.1.

For the reasons stated above, and in agreement with Judge Strand, I find that the Iowa Court of Appeals did not unreasonably apply the second prong of *Strickland*, or apply a rule contrary to *Strickland*, in order to find that Smith failed to established prejudice. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). Nor did the state appellate court make an unreasonable determination of the facts based on the evidence presented at the state court proceedings. *See Johnson*, 133 S. Ct. at

1091.  Thus, the state appellate court rightly decided that Smith did not prevail on his ineffective-assistance-of-counsel claim.  Accordingly, I overrule Smith's objections and deny Smith's application for postconviction relief.

### III.  CERTIFICATE OF APPEALABILITY

Smith must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case.  *See Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings."  *Cox*, 133 F.3d at 569.  Moreover, the United States Supreme Court reiterated in *Miller-El v. Cockrell* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:   The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"   537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, I determine that Smith's petition does not present questions of substance for appellate review, and therefore, does not make the requisite showing to satisfy § 2253(c).  *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b).  Accordingly, with respect to Smith's claims, I do not grant a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  Should Smith wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit.  *See Tiedman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## IV.    CONCLUSION

For the reasons discussed above, I accept Judge Strand's Report and Recommendation. Smith's Petition for Writ of Habeas Corpus is denied. In addition, I further order Smith's certificate of appealability be denied. Accordingly, the Clerk shall enter judgment in favor of the Respondent and against Smith.

**IT IS SO ORDERED**.

**DATED** this 31st day of March, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA